IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 4:00-CR-054-Y |
| THOMAS REEDY (01) | |

### RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

TO THE HONORABLE TERRY R. MEANS, UNITED STATES DISTRICT JUDGE:

The United States of America asks the Court to deny Defendant Thomas Reedy's compassionate-release motion for the reasons stated below.

**1.      Factual and Procedural Background**

Landslide was a company based in Fort Worth, Texas that offered computerized age-verification services for pornography sites. (PSR ¶ 21.) The company would also process and verify credit card subscriptions and identify for their clients, webmasters, the most accessed and most profitable sites. (PSR ¶ 22.)

In this case, webmasters acquired the child pornography, rented website space from commercial host providers within the United States, and then relied on Landslide's KeyZ service to manage and maintain their pornography sites. (PSR ¶ 32.) In exchange, Landslide retained approximately one-third of the revenues generated by the websites. (PSR ¶ 32.) Landslide's AVS service provided customers with memberships to adult pornography sites that included obscene images ranging from bestiality to torture.

Additionally, the service contained child pornography links and a classified section in which individuals could trade and seek out others to engage in contact offenses with children. (PSR ¶ 34.) Landslide also responded to complaints from customers, some of whom were dissatisfied with the quality of the child pornography content. In response, Reedy's wife, Janice, would contact webmasters to advise them that they needed to "improve" the quality of their content. (PSR ¶ 37.)

When Detective Nelson began investigating Landslide, it was the most organized child-pornography scheme he had ever encountered. (PSR ¶ 31.) Reedy's scheme involved computer technology to mass market, reached numerous customers, generated significant revenues, and contained the most graphic child-pornography images Nelson had ever seen. (PSR ¶ 31.) Agents executed search warrants at Reedy's residence in Fort Worth and at Landslide's office in Fort Worth. (PSR ¶¶ 38-39.) They also learned that Reedy had backed up the entire hard drive utilized at Landslide and stored it at his Dallas business, Landslide Productions. (PSR ¶ 40.) In two years, Landslide had earned $9,275,964 in gross sales from the services provided by KeyZ and AVS. (PSR ¶ 41.)

Following a jury trial, Reedy was convicted of 89 counts of conspiracy to transport child pornography, transportation of child pornography and possession of child pornography. The guideline calculations for Reedy accounted for the specific offense characteristics related to the child pornography as well as the more than $5 million in revenue taken in by Landslide and Reedy's status as a leader/organizer. As a result, Reedy's total offense level was 43; his guideline range was life. Reedy was ultimately sentenced to 180 months on each count, the equivalent of a life sentence.

Reedy appealed his conviction and sentence. The Fifth Circuit reversed and remanded the sentence based on multiplicity claims related to the charging of individual images rather than charging by each different child-pornography website, which could form a basis for conviction. *United States v. Reedy*, 304 F.3d 358, 367-68 (5th Cir. 2002). Reedy also argued that the government incorrectly calculated his pecuniary gain because it included money generated from legal pornographic websites. *Id*. at 369. The government responded that the district court considered only revenue from child-pornography sites and did not include revenues from adult-pornography sites. *Id*. at 369-70. The Fifth Circuit agreed with the district court's calculations, noting that at sentencing a second government auditor reviewed KeyZ's financial records and concluded "that Landslide earned $5,792,475.15 from all the websites containing child pornography for which it had provided a credit card verification system." *Id*. at 370.

At resentencing, this Court again imposed a sentence of life (180 months per count) based on 12 counts of conviction—one count of conspiracy to transport child pornography, one count of possession of child pornography, and 10 counts of transportation of child pornography to account for each of the 10 different websites involved in the offense conduct. *See United States v. Reedy*, 145 F. App'x 465, 468 (5th Cir. 2005). The Fifth Circuit affirmed the life sentence but vacated and remanded the 180-month sentence as to the possession of child pornography count, which was statutorily capped at 60 months. *Id*. Reedy also tried to re-argue on appeal that this Court had erred regarding the amount of financial gain attributed to him. *Id*. at 467.

This claim was barred, however, because the "law of the case doctrine" bars reexamination of a same issue of law or fact on a subsequent appeal. *Id*. at 467; *see also United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002). Reedy also argued that this Court erred by imposing consecutive sentences. The Fifth Circuit found no plain error, however, because this Court "found no reason to depart from the guidelines and that the law was vindicated by the sentence." 145 F. App'x at 467.

Reedy then filed a motion for habeas relief under Section 2255 in January 2007, alleging the government used false testimony and he received ineffective assistance of counsel. (Mot. to Vacate, Case No. 4:07-cv-024, ECF No. 1.) This Court denied Reedy's motion. (Order, ECF No. 12.) The Fifth Circuit affirmed. *United States v. Reedy*, 393 F. App'x 246, 248 (5th Cir. 2010). In his habeas filings, Reedy also claimed he was innocent, but the Fifth Circuit found that both the evidence at trial and Reedy's Section 2255 motion failed to suggest his case was extraordinary, involving a constitutional violation that led to the conviction of an actually innocent person. *Id*. at 247.

Five years later, Reedy filed a second motion to vacate his conviction. (Mot. to Vacate, Case No. 4:12-cv-271, ECF No. 1.) The only new ground raised was an ineffective-assistance-of-counsel claim based on his attorney's failure to inspect copies of computer servers provided to the defense. (Order Dismissing Unauthorized Claims, Order Resolving Successive Mot. for Relief Under 28 USC 2255 and Order Denying Certificate of Appealability, Case No. 4:12-cv-271, ECF No. 20.)

After examining the exhibits offered by Reedy and the trial testimony, this Court denied Reedy's motion and concluded that Reedy failed to offer newly discovered evidence that clearly and convincingly showed his actual innocence. (Order at 19, 4:12-cv-271, ECF No 20.) The Court further concluded that a certificate of appealability should not issue. (Order at 21, Case No. 4:12-cv-271, ECF No 20.) Nonetheless, Reedy appealed to the Fifth Circuit, which issued an order denying his certificate of appealability. (Judgment/Mandate of USCA at 2, Case No. 4:12-cv-271, ECF No. 29.)

Reedy then filed yet another motion to vacate the judgment in January 2015, this time pursuant to Federal Rule of Civil Procedure 60, suggesting the Court "misunderstood" Reedy's arguments, and that his second motion to vacate sentence was, in fact, not a second motion pursuant to Section 2255. (Mot. to Vacate at 1, Case No. 4:12-cv-271, ECF No. 35.) Noting that the Fifth Circuit found Rule 60(b) motions should be treated as 2255 motions when federal prisoners "essentially seek to set aside their conviction on constitutional grounds," this Court denied Reedy's motion. (Order Denying Mot. at 5, 8, Case No. 4:12-cv-271, ECF No. 37.)

Not surprisingly, Reedy's compassionate-release motion is nothing more than a new motion that seeks relief based on the same arguments that he has litigated and lost—both on direct appeal and in habeas. In particular, Reedy claims that he has shown extraordinary and compelling reasons for relief based on the same claim—rejected by both the Fifth Circuit and this Court—that his sentencing guidelines were incorrectly calculated as to his financial gain from Landslide. (Def's First Mot. to Modify Sentence at 2, Case No. 4:00-cr-54, ECF No. 363.)

This repackaged motion should be denied as outlined below.

**2.    Argument and Authorities**

    **A.    This Court should reject Reedy's argument as an impermissible "end-run" around the limitations in 28 U.S.C. § 2255.**

Reedy's efforts to expand compassionate release under Section 3582(c)(1)(A) to include subsequent changes to the interpretation of the sentencing guidelines should be rejected because they amount to nothing more than a thinly veiled attempt to bring an unauthorized successive habeas motion. Indeed, as noted, Reedy twice unsuccessfully challenged his financial gain on direct appeal. (*See supra* at 3-4.) Moreover, the guidelines as to child-pornography offenses have only because more stringent since Reedy's imprisonment, not more lenient.

Reedy is not the first defendant to try and use Section 3582(c)(1)(A) as an end-run around the procedural hurdles in Section 2255. In *United States v. Arojojoye*, 806 F. App'x 475 (7th Cir. 2020), the defendant claimed that "[t]he disparity between his sentence and his co-defendant's . . . was an extraordinary and compelling reason to reduce his sentence." *Id.* at 477. In rejecting that argument, the Seventh Circuit stated that "any post-judgment motion in a criminal proceeding that fits the description of a motion to vacate, set aside, or correct a sentence set forth in the first paragraph of Section 2255 should be treated as a Section 2255 motion." *Id.* at 478 (internal quotation marks omitted). It thus considered Arojojoye's motion to be an unauthorized successive Section 2255 motion and rejected it accordingly. *Id.*

Similarly, in *United States v. Handerhan*, 789 F. App'x 924 (3d Cir. 2019), the defendant sought relief under Section 3582(c)(1)(A) to remedy "various errors at sentencing, including . . . miscalculating his Guidelines range and . . . allowing an allegedly unprepared substitute counsel to represent him." *Id.* at 926. Although the defendant in *Handerhan* did not appeal the availability of relief under Section 3582(c)(1)(A), the Third Circuit noted that Section 3582(c)(1)(A) does not provide "for release on the basis of arguments like Handerhan's that were or could have been raised on direct appeal or in a § 2255 motion, let alone for defendants like Handerhan who have already completed a § 2255 proceeding and who are subject to the restrictions on filing second or successive § 2255 motions." *Id.* And the Third Circuit rightly "question[ed] whether an alleged sentencing error that was correctible in prior proceedings could ever be an 'extraordinary and compelling reason' for release under § 3582(c)(1)." *Id.*

Finally, and most recently, the Eighth Circuit has also rejected a claim under Section 3582(c)(1)(A) as being nothing more than an unauthorized successive Section 2255 motion in disguise. In *United States v. Fine*, 982 F.3d 1117 (8th Cir. 2020), that court affirmed the denial of a compassionate-release motion based on Fine's claim that he would not be considered a career offender if sentenced today. *Id.* at 1118-19. In doing so, the Eighth Circuit relied on *Arojojoye* and held that Fine's challenge to the career-offender determination and resulting sentence "was an unauthorized successive motion to vacate, set aside, or correct a sentence." *Id.* at 1119.

Because the court affirmed on that basis, it did not address the "unsettled" issue of "what reasons a court may consider extraordinary and compelling under § 3582(c)(1)(A)(i)." *Id.* at 1118.[1]

The same reasoning applies here. Reedy's claim that he should receive a sentence reduction based on different guideline calculations for financial gain have already been litigated (and lost) both on direct appeal and in habeas. Accordingly, to the extent this Court considers Reedy's motion, it should conclude that the argument is nothing more than an impermissible Section 2255 motion "in disguise" and reject it accordingly. *See United States v. Hernandes*, 708 F.3d 680, 681-82 (5th Cir. 2013) (construing a Rule 60(b) motion as "an unauthorized habeas petition within the meaning of [*Gonzalez v. Crosby*, 545 U.S. 524 (2005)]" and dismissing the appeal).

> **B.    The Court can also deny Reedy's motion in its discretion by concluding that Reedy has not identified an "extraordinary and compelling reason[]" for relief and/or by concluding that the Section 3553(a) factors weigh against relief.**

This Court also can exercise its discretion and deny Reedy's motion on the merits by concluding that Reedy's request does not rise to the level of "extraordinary and compelling reasons" under the compassionate-release statute. While the Fifth Circuit recently clarified that "neither the policy statement [USSG § 1B1.13] nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582," *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021), it also has made

---

[1] Several district courts have reached the same conclusion and rejected the use of Section 3582(c)(1)(A) to challenge issues that could have been raised on appeal or in habeas. *See, e.g.*, *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. Feb. 24, 2020); *United States v. Williams*, No. 4:15-CR-00037-1BR, 2019 WL 6529305, at *1 (E.D.N.C. Dec. 4, 2019).

clear that Section 1B1.13 and its commentary still provide guidance and "inform[]" the analysis of whether "extraordinary and compelling reasons" exist. *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).

Section 1B1.13 and its commentary, while not binding in this Circuit, list three circumstances in which a prisoner satisfies the "extraordinary and compelling" standard: (1) the defendant suffers from a terminal illness or an irreversible condition that diminishes the defendant's ability to provide self-care in prison; (2) the defendant is experiencing health deterioration due to the aging process (and is at least 65 years' old and has served a certain portion of his/her sentence); or (3) there has been the death or incapacitation of a caregiver to the defendant's children or to the defendant's spouse or partner. USSG § 1B1.13, comment. (n.1(A)-(C)). The commentary also has a fourth circumstance—for additional reasons determined by the Director of the BOP. USSG § 1B1.13, comment. (n.1(D)). Addressing subsection (D), the BOP has issued a regulation defining its own consideration of requests for compassionate release, which are limited to the same bases the Sentencing Commission identified: serious medical condition(s), advanced age, and family circumstances.[2]

---

[2] *See* BOP Program Statement 5050.50, ¶¶ 3-6, *available at* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

Response to Compassionate-Release Motion – Page 9

Reedy's motion makes clear that he is not seeking a reduction in sentence based on health reasons. (Mot. at 1, ECF No. 363.) Instead, he is just re-urging a claim he has previously raised and lost, and which contradicts the reliable evidence presented at trial and sentencing. As such, his request for a reduced sentence is not based on anything this Court should consider "extraordinary or compelling."

Reedy's argument that his case is analogous to Congress's amendment to 924(c)'s enhanced penalties should also fail. While courts are split as to whether previously "stacked" Section 924(c) convictions can be the basis for compassionate release after the First Step Act prospectively lowered certain mandatory minimums, Reedy is wrong to suggest that Congress prohibited "stacking"—let alone, that his sentence is affected at all by the First Step Act. Indeed, Section 924(c) still permits criminal liability for multiple 924(c) offenses, and they continue to carry consecutive sentences; Congress simply lowered applicable mandatory minimums associated with non-final 924(c) offenses.

Further, as previously stated, Congress has chosen to increase, not lessen, the penalties for those who sexually exploit children. For example, though his possession of child-pornography charge carried a maximum penalty of 60 months in 2001, he would face a penalty of up to 240 months today because he possessed child pornography images depicting prepubescent minors. Thus, if anything, this case represents a situation that is diametrically opposed to cases where defendants would face considerably lower sentencing ranges had they been sentenced today as opposed to previously.

Finally, even if this Court concludes that Reedy has shown an "extraordinary and compelling reason[]" for relief, it should still deny his motion under the Section 3553(a) factors. As stated earlier, the facts in this case are egregious. Before Reedy's scheme to create subscription services for child-pornography websites, he was making less than $40,000 annually through Nurse Finders. (PSR ¶ 106.) A few years later, in the span of the roughly two years running Landslide, Inc., his gross sales exceeded $9,000,000. (PSR ¶ 104.) Reedy helped to improve sales for multiple webmasters who were exploiting children, thereby feeding the demand for child pornography. And Reedy ensured, through his wife's customer service assistance, that the webmasters "improved" child pornography when people complained about its quality. Reedy not only exploited children financially, he also had his own collection of child pornography at home. But most telling was Detective Nelson's statement that Reedy's company Landslide was the most organized child-pornography scheme he had ever seen, promoting the most graphic collection of child pornography he had ever seen.

The Fifth Circuit has specifically noted that it was "not unreasonable for [a] court to place greater weight on the seriousness of [the] offense" in denying compassionate release. *United States v. Martinez*, 832 F. App'x 906, 906 (5th Cir. 2021). And it has routinely affirmed district courts' denials of compassionate-release motions where those courts have found that the defendants' conduct and circumstances confirmed that relief was not appropriate under the Section 3553(a) factors. *See, e.g.*, *United States v. Brown*, 829 F. App'x 695, 696 (5th Cir. 2020) (concluding that "[i]t was not unreasonable for the district court to afford greater weight to [the defendant's] history and characteristics, the

amount of time served on his sentence, and the need to protect the public from further crimes by [the defendant] than the weight it placed upon his medical issues, the impact of the pandemic at [the prison], and the BOP's response to the pandemic"); *United States v. Smith*, 828 F. App'x 215, 216 (5th Cir. 2020) (affirming a district court's denial of compassionate release under the Section 3553(a) factors where the court "determined that Smith did not qualify for release because he had a very serious criminal history, and he was serving a 235-month sentence that commenced in 2016"); *cf. Thompson*, 984 F.3d at 435 ("Thompson can point to no case in which a court, on account of the pandemic, has granted compassionate release to an otherwise healthy defendant with two, well-controlled, chronic medical conditions and who had completed less than half of his sentence.").

For these reasons, the Court should deny Reedy's motion.

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

*s/ Aisha Saleem*
AISHA SALEEM
Assistant United States Attorney
Texas State Bar No. 00786218
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile:  817-252-5455

## CERTIFICATE OF SERVICE

      I hereby certify that on June 15, 2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I also mailed a paper copy to Thomas Reedy, 25673-177, Federal Correctional Institution, P.O. Box 1000, Marion IL, 62959.

      *s/ Aisha Saleem*
      AISHA SALEEM
      Assistant United States Attorney