UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 4:00-CR-54-Y |
| | § | |
| THOMAS REEDY | § | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEIF**

Before the Court is Thomas Reedy's motion to reduce his sentence of life in prison because an extraordinary and compelling reason exists.  See 18 U.S.C. § 3582(c)(1)(a).  That reason, he argues, is that a life sentence is unduly severe given his background and criminal culpability.  The Court sympathizes with Reedy but disagrees that this alone constitutes an extraordinary and compelling reason.  Since his sentencing, prison terms for his crimes──all relating to the distribution of child pornography── have increased.  Whatever an individual judge's thoughts on the appropriateness of Reedy's sentence, there is no principled reason for reducing his legally valid sentence.  For this reason, described in more detail below, Reedy's motion will be denied.

## BACKGROUND

Reedy was born in 1963 and generally experienced a happy, normal childhood.  His parents remained married, and both maintained stable jobs.  No family members had criminal records or drug problems. He did well in school and played drums in the band. Reedy graduated from high school in 1981.

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELIEF – PAGE 1

Reedy then stumbled around trying to find his way into adulthood. After graduating high school, he enrolled in college and quickly dropped out. He then started working full time at a nursing home in his hometown, eventually advancing to a nursing position and office manager. He turned his position into a good paying nursing job at area hospitals, which eventually took him to Fort Worth, Texas. He also went through two quick marriages, both ending in divorce, and neither producing children.

But things started coming together in the mid-1990s. A few years before then, Reedy discovered his knack for computers and computer programming. He read books on the subject and devoted his personal time to experimenting with computers. This soon became his full-time job. Then in 1997, Reedy married Janice Lowe, and soon after adopted her nine-year-old daughter. By all accounts, these two had a good marriage, and Reedy was a good father.

By 1997, Reedy's internet-based company, Landslide, was thriving by catering to pornography websites. Reedy did not create any content. But Landslide recruited websites who did create and host content, marketed those sites, and then provided information to increase traffic to the sites. Landslide employed between 12 and 15 people, including Reedy's wife. Between 1997 and Reedy's arrest in September 1999, Landslide earned a profit of $2,968,422.

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELIEF – PAGE 2

Several, but not all, of the pornography websites displayed children.   And Reedy knew this.   Landslide's website advertised child pornography, and $1,290,412 of its profits were derived from child pornography.   In fact, Landslide's website prominently displayed links and advertisements to graphic child pornography.

After being indicted on 89 counts related to the distribution of child pornography, the sentencing guidelines recommended Reedy serve 180 months' imprisonment, with each count to run consecutively.   The Court imposed a life sentence, which at the time was mandatory.   Reedy was only 36 years old.

Reedy has since appealed this sentence twice.  *U.S. v. Reedy*, 304 F.3d 358 (5th Cir. 2002); *U.S. v. Reedy*, 145 F. App'x 465 (5th Cir. 2005).   He has also filed a writ of habeas corpus.  *Reedy v. U.S.*, Civ. No. 4:12-CV-721-Y (N.D. Tex. 2012).   His life sentence has withstood all legal challenges.

In prison, Reedy has been a model inmate.   After 20 years, he has no disciplinary problems.   He has taken advantage of many educational opportunities, and he has demonstrated a strong work ethic.   If released, Reedy has a feasible plan of finding work and becoming a contributing member of society.

On April 22, 2021, Reedy filed a motion to reduce his sentence under the compassionate-release statute.   18 U.S.C. 3582(c)(1)(A).

(Doc. no. 363.)  He advances on two main arguments[1]: (1) following the sentencing guidelines' recommendation of stacking his sentences is no longer mandatory; and (2) his sentence is disproportionately harsh compared to other crimes.  The government filed a response (doc. no. 368), and Reedy a reply (doc. no. 371).

## ANALYSIS

Reedy asks the Court to reduce his life sentence.  The Court undertakes this analysis cautiously because the finality of sentences is a concept "which is essential to the operation of our criminal justice system" and diminishing this concept "deprive[s] [criminal law] of much of its deterrent effect."  *Teague v. Lane*, 489 U.S. 288, 309 (1989).  But Congress authorized district courts to make these reductions in appropriate cases.

Under 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate-release statute, a district court has discretion to "reduce a term of imprisonment" upon a convict's motion if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) the reduction is consistent with applicable sentencing factors, and (3) "such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission" (USSC).  18 U.S.C. § 3582(c)(1)(A).  As explained

---

[1] Reedy also argues that the Court miscalculated his pecuniary gain from his crime.  But he has already challenged this and lost.  *See Reedy*, 304 F.3d 358, 370 (5th Cir. 2002).  The Court will not revisit the issue again.

below, the Court concludes that Reedy's sentence and situation fail to provide extraordinary and compelling reasons.

This difficult conclusion emerges from the meaning of "extraordinary and compelling reasons."  The Fifth Circuit has so far declined to give the phrase any legal substance.  Congress likewise failed to define it, saying only that the "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  The Fifth Circuit notes that applying this phrase has been "notoriously thorny."  *Shkambi*, 993 F.3d at 391.

The difficulty increases when the inmate claims the severity of his sentence itself is the extraordinary and compelling reason. The United States Sentencing Commission issued policy statements that provide some guidance when the circumstances justifying the inmate's compassionate release are his medical condition, age, or family circumstances.  *Id.*  That policy statement, while not binding on the Court, provides guidance.  *See United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020).  But that policy provides no guidance when determining whether a sentence was too severe for the crime.

Judge Means, having faced this issue before, crafted a test to determine when a sentence's severity itself constitutes extraordinary and compelling reasons.  *United States v. Tolliver*, Crim. No. 4:00-CR-84-Y, 2021 WL 1419456 (N.D. Tex. Mar. 29, 2021).

After considering other circuit-court and district-court opinions, relevant statutes, USSC policies, and BOP policies, the Court concluded that the Court should consider the following factors:

    (1)  an "exceptionally dramatic change" in the relevant sentencing regime;

    (2)  that, today, the defendant would receive a significantly reduced sentence;

    (3)  the defendant appears rehabilitated, deserving of the reduction, and likely to succeed upon release; and

    (4)  strong deference to the BOP's relevant guidelines and decisions.

*Id.* at *4–5. This test provides some shape to the analysis, but the analysis is as much art as science. The weight given to each factor necessarily varies depending on the circumstances, and the ultimate balancing must be case specific.

But the first factor is necessary. When an inmate grounds his sentence-reduction request on his sentence's severity, which Reedy has, then the relevant sentencing law must have changed. "The relevant statutes suggest this limit." *Tolliver*, 2021 WL 1419456 at *7 (discussing the interaction of 18 U.S.C. § 3553 and § 944(t)). Requiring a change in law also provides a principled basis for altering final convictions. *Id.* (stating that this requirement "is a flood-control element"). Without this, the compassionate-release motion would just be a motion to reconsider;

ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELIEF – PAGE 6

that is to say, a mulligan.  That cannot possibly rise to the level of "extraordinary and compelling."

Moreover, the change must be exceptionally dramatic. Congress already provided a mechanism for small changes in the guidelines.  See 18 U.S.C. § 3582(c)(2).  Therefore, the first question in this case must be what relevant sentencing-law changes have there been?

In this case, the Court has identified two relevant changes. First, Reedy notes that *United States v. Booker* held that the United States Sentencing Guidelines are not mandatory.  543 U.S. 220 (2005).  When the Court sentenced Reedy, they were mandatory. In the abstract, this change is not exceptionally dramatic.  It addresses no offense or sentence.  Thus——by itself——the *Booker* decision fails to constitute a significant enough change to warrant the label "extraordinary and compelling."

When applied to Reedy's life sentence, the *Booker* discretion amounts to some change.  *Tolliver*, 2021 WL 1419456, at *6 (quoting *U.S. v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020)).  If sentenced today, it is possible that the Court, relying on *Booker*, would vary from the guideline recommended life sentence.  But his resulting sentence would still be quite severe.  Child pornography is a serious crime.  In this case, the child victims are unknown, but their experiences will traumatize them for the rest of their lives.  While Reedy did not actively participate in the creation

of the pornography, he provided a platform that motivated others to do so.  There are some mitigating factors: Reedy had no criminal history, he had a stable family life, and he committed his crimes from behind a keyboard.  But Reedy knew what he was doing, encouraged it, and profited handsomely from it.  With the million-plus dollars he earned from child pornography, he bought a new house, new BMW and Mercedes, new furniture, and other accoutrements of wealth.  Any variance allowed by *Booker* would have still resulted in a long sentence.  This makes it difficult to say the *Booker* holding resulted in a change in sentencing law that was "exceptionally dramatic."

And the second relevant change in law works against Reedy. Since 2000, when the Court sentenced Reedy, the maximum sentences for Reedy's crimes have all increased.  18 U.S.C. §§ 2252(a)(1), 2252A (since 2000, the statutory maximum increased from 15 to 20 years).  The increased maximums suggest that, over the past two decades, societal contempt of these crimes has increased.  Also, the sentencing guidelines still recommend stacking the counts, which means that, today, Reedy's recommended sentence would be longer.

Together, these two changes fail to constitute an exceptionally dramatic change to the relevant sentencing law.  And without that, the Court cannot in good conscious hold that Reedy has presented extraordinary and compelling reasons to modify a

final criminal conviction.  *See Williams v. United States*, 401 U.S. 667, 691 (1971) (concurrence) (Harlan, J.) ("No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued  incarceration shall be subject to fresh litigation on issues already resolved.").  Accordingly, the Court concludes Reedy failed to present extraordinary and compelling reasons for modifying his sentence under 18 U.S.C. § 3582(c)(1)(A).

### CONCLUSION

For these reasons, Reedy's motion should be and it is hereby **DENIED**.

SIGNED August 23, 2021.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE